David and Jennifer PARDINI, on behalf of themselves and on behalf of their minor child, Georgia Pardini, Plaintiff,

v.

ALLEGHENY INTERMEDIATE UNIT and Barbara Minzenberg, Program Director, Defendants.

No. CIV.A. 03–0725.

United States District Court, W.D. Pennsylvania.

Aug. 29, 2003.

David D. Pardini, Pittsburgh.

William C. Andrews, Esquire, The Law Offices of Andrews & Price, Pittsburgh.

## MEMORANDUM OPINION

SCHWAB, District Judge.

### I. INTRODUCTION.

On May 30, 2003, this Court denied Plaintiffs David and Jennifer Pardini's motion for preliminary injunctive relief pursuant to the Individuals With Disabilities Education Act, 20 U.S.C. § 1415(i)(2) ("IDEA"). The Pardinis sought to enjoin Defendants, the Allegheny Intermediate Unit ("AIU") and Barbara Minzenberg, AIU's program director, to continue to provide certain therapeutic services to their daughter, Georgia Pardini, who has cerebral palsy, while the parties disputed AIU's proposed Individual Educational Plan ("IEP") to be put into place for Georgia following her third birthday. On August 25, 2003, following a period of discovery and a failed mediation attempt, this Court heard evidence on the Pardinis' request for a permanent injunction and other relief, and argument on Defendants' motion for summary judgment. At that hearing, Plaintiffs agreed with Defendants that Ms. Minzenberg should be dismissed from the case as an individual defendant, and the Court granted Defendants' motion for summary judgment as to Ms. Minzenberg only.

After careful consideration of the evidence adduced at the hearings on the request for a preliminary injunction and for a permanent injunction, the proposed findings of fact and conclusions of law, the briefs in support and in opposition to Plaintiffs' request for injunctive relief, and

the Court's decision of May 30, 2003 rendered on the record (Notes of Testimony ("N.T."), May 30, 2003, Joint Exhibit 3, at 26–37), the Court will deny Plaintiffs' request for injunctive and other relief on the merits, and will deny the remaining portion of Defendants' motion for summary judgment as moot.

## II.  FINDINGS OF FACT.

The Court makes the following findings of fact from the joint stipulation of the parties as to undisputed facts, and from this Court's resolution of credibility and disputed facts from the evidence and testimony submitted at the hearings.

### A.  Joint Stipulations.

1.  Georgia Pardini was born on April 18, 2000.

2.  As of December, 2002, Georgia's Individual Family Service Plan ("IFSP") provided by the Alliance for Infants and Toddlers, Inc. ("AIT") included physical therapy one-hour sessions two times per week, occupational therapy once per week and conductive education one-hour sessions three times per week.

3.  On or about February 25, 2003, Georgia was re-evaluated by the AIU in anticipation of her third birthday on April 18, 2003, for transitioning her educational placement and services from the IFSP to an "IEP" (Individual Education Program) as required by the Individuals With Disabilities Education Act, 20 USC § 1400 *et seq.*, ("IDEA").  The Evaluation Report confirmed Georgia's qualification for continued special education placement and related services in the form of an IEP. The IEP was completed on or about March 7, 2003, and received by Plaintiffs on or about March 15, 2003, under an undated cover letter which directed them to "Read the report, sign the original, and return in the enclosed envelope within 5 days [, and]

[i]f you disagree with any part of the report, write a statement on a separate sheet of paper that describes the items with which you disagree."

4.  The first IEP meeting took place on March 24, 2003, and Plaintiffs refused to sign or agree to the Evaluation Report.

5.  Plaintiffs requested an independent evaluation and information as to where to obtain an evaluation which would consider conductive education, and AIU advised Plaintiffs that it would seek a due process hearing, as provided by the IDEA, 20 U.S.C. § 1415(f), to prove the appropriateness of their evaluation and thus, deny the public expense of the independent evaluation.

6.  Plaintiffs specifically requested that all of the services (including conductive education) that had been provided by AIT under the IFSP continue as Georgia's "current educational placement" and remain in place pending the resolution of any dispute.

7.  Plaintiffs confirmed these requests by letter of March 25, 2003, and further requested the specific authority upon which AIU was relying to selectively terminate the provision of conductive education.

8.  On April 16, 2003, Plaintiffs received by Federal Express and facsimile (sent April 15, 2003), copies of AIU's response letters dated March 31, 2003, and April 15, 2003, whereby, *inter alia*, it was agreed that the second IEP meeting scheduled for April 17, 2003, would be rescheduled.  IEP meetings were held on March 24, 2003, and May 1, 2003.

9.  Plaintiffs demanded a written communication explicitly stating that all of the services under Georgia's current IFSP educational placement, not just conductive education, would be terminated or discon-

tinued, for whatever reason, as of or after her third birthday on April 18, 2003. AIU responded by facsimile letter stating the following with regard to the status of early intervention services for plaintiffs' daughter:

1. You have requested an independent educational evaluation ... [AIU] is obligated to request a due process hearing to defend the appropriateness of our evaluation.

2. [AIU] staff members attempted to conduct an IEP meeting on March 24, 2003. However, you and your wife chose not to proceed with that meeting.

3. On Georgia's third birthday, the Infant Toddler program is no longer in effect.

4. I have offered a series of additional dates, times and locations for an IEP meeting to be held so that you and the [AIU] DART Program can agree on an interim free and appropriate educational program for your daughter.

5. We cannot proceed with the provision of services without your permission via a signed Notice of Recommended Educational Placement (NOREP).

10. On April 18, 2003, Georgia turned three years of age and received her usual IFSP services. However, on April 21, 2003, all of Georgia's regularly scheduled services as per her current IFSP education placement, were discontinued or terminated. Plaintiffs responded by letter of that same day confirming the communications of the past week, taking exception with AIU's position and representations, and demanding that the services be reinstated as per the IDEA's "stay-put rule," 20 U.S.C. § 1415(j), in lieu of the instant civil action.

11. Plaintiffs privately placed their daughter for two (2) sessions of conductive education services, one for the week of April 21, 2003 and one for the week of April 28, 2003. A copy of the unpaid invoice is attached hereto as Exhibit "A".

12. An IEP meeting occurred on May 1, 2003, resulting in the production of the documents that are Joint Exhibits No. 11 and No. 25.

13. Due process hearings were conducted on June 10, 2003 and June 12, 2003. The purpose of these hearings was to address Plaintiffs' request for Georgia's services provided under the IFSP to continue, or "stay-put," pending the resolution of the disputed IEP, and the appropriateness of providing an independent evaluation at public expense.

14. With respect to the state due process hearings, Office for Dispute Resolution (ODR) Hearing Officer, Dr. Dennis Fair issued two orders on June 19, 2003. Joint Exhibit No. 30. Dr. Fair's first order followed this Court's ruling of May 30, 2003, and held that Georgia's IFSP was not "pendant," and therefore the stay-put rule did not require AIU to continue all services provided under the IFSP. His second order continued the due process hearing that had been scheduled to determine whether the Pardinis should receive an independent evaluation at public expense.

15. At the conclusion of the telephone hearing of May 30, 2003 on Plaintiffs' request for a preliminary injunction, the Court ruled on the record (in the interests of expediency), based upon the Joint Stipulation of May 29, 2003 and additional findings, that the Pardinis had not shown a likelihood of success on the merits in that the IFSP did not constitute a "current educational placement" so as to trigger the "stay-put" rule of 20 U.S.C. § 1415(j). The Court reasoned, inter alia, that if the IFSP was deemed the "current education-

al placement" under section 1415(j), AIU would have been required to continue services provided by a different agency, the AIT, pending resolution of the dispute over the proposed IEP. Joint Exhibit 3, N.T. May 30, 2003, at 32–35. The Court also made a finding at that time that the Plaintiffs had not exhausted their administrative remedies under the IDEA. *Id.* at 36. Further, the Court found Plaintiffs would not be irreparably harmed by refusal to grant the injunction, and that the public interest would be served by permitting the due process hearings and administrative proceedings to continue, which would develop a full and meaningful record if further review became necessary. *Id.* at 36–37.

### B. Additional Findings—August 25, 2003 Evidentiary Hearing.

16. When the transition process first began in January 2003, Plaintiffs communicated to AIU that they considered conductive education to be the most beneficial related service that had been provided to Georgia. AIU acknowledged that it had an unwritten policy whereby it did not and would not sanction or approve conductive education as an IEP related service, and that it would only provide the related services it deemed standard.

17. The first IEP meeting occurred on March 24, 2003, at which Plaintiffs refused to sign the Evaluation Report, requested an Independent Evaluation at AIU's expense and requested that all of the IFSP services be continued pending the dispute over AIU's Evaluation Report. AIU indicated all IFSP services, except for conductive education, would continue, to which Plaintiffs requested the authority AIU was relying on to single out conductive education for termination pending the dispute. AIU never presented for discussion, nor asked Plaintiffs to sign, a Notice of Recommended Educational Placement (NO-REP) at that first IEP meeting.

18. Plaintiffs did not hear from AIU until April 15, 2003, when they received a phone call from AIU inquiring as to whether Plaintiffs had received correspondence mailed to them on March 31, 2003, and April 12, 2003, and scheduled a second IEP meeting for April 17, 2003. Plaintiffs had not received such correspondence, and responded with a facsimile letter asking that such a last minute meeting be rescheduled. Later that day on April 15, 2003, Plaintiffs received only the original of AIU's Invitation to Attend IEP Meeting on April 17, 2003.

19. There was an apparent breakdown in communication between the parties in April 2003. The Court finds that Defendants mailed letter notices to Plaintiffs, but that Plaintiffs, in fact, did not receive them until April 16, 2003, when Plaintiffs received by Federal Express and facsimile (sent April 15), copies of AIU's letters dated March 31, 2003, and April 15, 2003, whereby, *inter alia*, it was agreed that the second IEP meeting would be rescheduled.

20. On April 16, 2003, AIU made the unilateral decision, without a hearing, to terminate all of Georgia's IFSP services, not just the conductive education, and contacted her service providers by telephone and directed them to stop the provision of all services upon her third birthday on April 18, 2003. Plaintiffs were advised of this termination of services on April 16, 2003, during the provision of services by Georgia's physical therapist and conductive educator, and had no forewarning, given that AIU's prior indications were that only the conductive education would be terminated pending the dispute. AIU made no effort to call or make any contact with Plaintiffs to inform them that the decision had been made to terminate all of Georgia's services.

21. On April 18, 2003, Georgia turned three years old and received her usual IFSP services. However, as of April 21, 2003, all of Georgia's regularly scheduled services, as per her IFSP, had been discontinued or terminated. AIU's position was that the IDEA's "stay-put" rule, or pendency provision, 20 U.S.C. § 1415(j), did not apply to a transition from an IFSP to an IEP at age 3, and contended it was not obliged to maintain the status-quo of IFSP services during disputes in transition, but only to schedule a meeting to propose its IEP. Plaintiffs understanding is that AIU required them to attend the scheduled meeting and sign in agreement with AIU's proposed IEP or NOREP, if Plaintiffs were to receive those services proposed by AIU, and only those services, pending any dispute. Not unreasonably, Plaintiffs perception is that AIU was offering them its proposed services as the IEP plan, take it or leave it.

22. Plaintiffs responded by letter of April 21, 2003, confirming the communications of the past week, taking exception with AIU's position and representations, demanding that the services be reinstated as per the IDEA's stay-put rule *in lieu* of the instant civil action, asserting that AIU's efforts to proceed with an IEP meeting were premature given the pending dispute over an independent evaluation, and advising that if a NOREP was necessary for the continued provision of services, they would sign one that explicitly included all of the same services and terms of their IFSP.

23. Plaintiffs attended AIU's scheduled IEP meeting on May 1, 2003 under protest. AIU presented Plaintiffs, for the first time, its proposed NOREP for only those IDEA services it deemed appropriate, and it excluded conductive education. Plaintiffs were not privy to the terms of AIU's NOREP until that day. AIU refused to offer Plaintiffs a NOREP that included all of the IFSP related services and Plaintiffs signed their objection to AIU's NOREP as such. Nevertheless, the AIU has not restarted Georgia's IDEA services.

24. The services provided Georgia under her IFSP have not been provided by AIT or AIU, and she has received no publicly provided IDEA services or educational benefits, since April 18, 2003.

25. Plaintiffs have paid $160.00 out-of-pocket for two sessions of conductive education services from the same IFSP provider, one for the week of April 21, 2003 and one for the week of April 28, 2003, in an effort to maintain some continuous treatment. On May 2, 2003, Georgia and Jennifer Pardini traveled to the Euromed Rehabilitation Center in Mielno, Poland. The Euromed provided for a month of intensive specialized treatment and therapy, somewhat, in place of Georgia's terminated IDEA services, at a flat-rate out-of-pocket cost of $7500.00 (exclusive of travel costs). Plaintiffs also have paid $475.00 out-of-pocket for a month of services through United Cerebral Palsy/North Coast Ohio Conductive Education of Cleveland and $480.00 to the Ronald McDonald House of Cleveland for the same month of July 2003 (exclusive of travel costs).

26. Because defendants have terminated the IFSP services, Plaintiffs have arranged for and are committed to the provision of substitute services via United Cerebral Palsy/North Coast Ohio Conductive Education for the month of September 2003, and the provision of all modalities via the Euromed from October 15, 2003 to November 15, 2003.

27. Mrs. Pardini, who the Court finds credible, articulate and sincere, stated that the parents' financial resources are strained to near-breaking point by paying for the private conductive education, relat-

ed services and travel costs for Georgia's continuing development.

28. The Pardinis reasonably believe that conductive education, which was provided by AIT at AIT's instigation, has proven quite effective and most beneficial to Georgia.

29. AIU apparently refused to even consider the appropriateness and effectiveness of conductive education for Georgia's educational development as part of its proposed IEP, prior to presenting that IEP to the parents.

30. However, due process hearing and administrative appeal procedures provided by Pennsylvania pursuant to the IDEA are in place, wherein it can be determined administratively and initially by a neutral hearing officer, then by the Pennsylvania Department of Education's Special Education Appeals Panel, whether a meaningful and appropriate IEP should include such conductive education for Georgia, or whether the alternatives offered by AIU are adequate to ensure her meaningful progress.

31. Although such administrative procedures are available, this Court finds that, in light of the somewhat inexplicable communication problems and institutional stubbornness exhibited by AIU to date (i.e., its "take it or leave it" approach), that the Pardinis face a bewildering bureaucratic nightmare. This bureaucracy must be particularly daunting to young parents who are financially strapped and emotionally pressed to provide for the special present needs of their child.

## III. CONCLUSIONS OF LAW

1. As will be explained below, the stay-put provision of the IDEA does not require the AIU to provide the exact same educational program that had been provided by the AIT, a different agency with different funding streams, providing services for children of ages 0 to three.

2. The responsibility for choosing the educational method most suitable to the child's needs is left to the educational agency.

3. Part B of the IDEA requires that States provide a free appropriate public education ("FAPE") to eligible children with disabilities from age three to twenty-one, 20 U.S.C. § 1412; 34 C.F.R. Part 300.

4. FAPE means special education and related services that meet state standards, provided in conformity with an IEP, at public expense, under public supervision and direction, without charge, and include an appropriate preschool, elementary, or secondary school education. 20 U.S.C. § 1401(8).

5. Under the birth to three years program, an Individualized Family Service Plan (IFSP) is family centered, focusing on the needs of the family to help the child. An IEP is centered and responsive to the needs of the individual child, particularly his or her educational needs and related services.

6. An IFSP is a medical model, which requires a 25% delay in one or more developmental areas to be eligible. An IEP is an educational model which requires a 25% delay in a developmental area and a need for specially designed instruction.

7. The focus of the AIU's 3–5 years program is to allow the child to participate in appropriate preschool activities with nondisabled peers to the maximum extent possible.

8. Each state is obligated to ensure that a FAPE is made available to each eligible child residing in the state, beginning no later than the child's third birthday; and an IEP or IFSP is to be in effect for the child by that date. 34 C.F.R. § 300.121(c).

9. An initial evaluation for educational service under Part B of the Act must determine whether the child is a child with a disability and if so, determine the educational needs of the child. 34 C.F.R. § 300.320(a)(1), (2).

10. States are not required to continue the IFSP when a child reaches the age of three, the transition year. IFSPs may serve as the IEP if the agency and parents both agree. 34 C.F.R. § 300.342(c)(1).

11. An IFSP may serve as the IEP if it is (i) consistent with State policy; and (ii) agreed to by the agency and the child's parents. 34 C.F.R. § 3003.342(c)(1).

12. The IDEA recognizes that the IEP will not contain the same components of the IFSP because the mandated transition process is to include procedures to help the child for changes in service delivery, including steps to adjust to and function in a new setting. 34 C.F.R. § 300.344(h).

13. When a child reaches the age of three, states are required to develop policies and procedures to facilitate the smooth transition from an IFSP to an IEP. 20 U.S.C. § 1413(a)(15).

14. The policies and procedures are to ensure that the new agency will provide adequate notice to the family of the need to evaluate for IEP eligibility, the change in the model of services, and the change in the provider agency.

15. A child is only entitled to receive such services as are required to assist the child to benefit from special education.

16. The stay-put provision of the IDEA provides that the appropriate early intervention services currently provided shall continue, or if applying for initial services, that the child shall receive the services not in dispute. 20 U.S.C. § 1415(j), § 1439(b) (emphasis added).

17. Plaintiffs are in the transition process of applying for initial services under Part B. The applicable stay-put placement for a three-year old child is the proposed public school placement and program. 34 C.F.R. § 300.514 (formerly 34 C.F.R. § 300. 513).

18. Under 34 C.F.R. § 300.514, if a dispute arises about a child's initial placement in the public school program, the position of the United States Office of Special Education Program ("OSEP") is that the stay-put is the public school program, not the birth to three year IFSP services. *Letter to Klebanoff*, 28 IDELR 478, January 23, 1997 (OSEP's interpretation of former stay-put provision at section 300.513); *Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180–82 (9th Cir.2002). OSEP's interpretation of the stay-put provision, by the agency charged with its implementation, is entitled to *substantial* deference. *See e.g., Michael C. v. Radnor Township School Dist.*, 202 F.3d 642, 649–52 (3d Cir.2000) (OSEP's policy memorandum regarding stay-put provision in the context of a student's transfer from an out of state public school was given substantial, albeit not controlling, deference).

19. The primary responsibility for formulating the education to be accorded to a handicapped child, and for choosing the educational method most suitable to the child's needs was left by the IDEA to the state and local educational agencies. *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

20. So long as a school district or educational agency offers a student FAPE, the educational authority has discretion over what instructional methodologies will be used. *E.S. v. Indep. School Dist. No. 196*, 27 IDELR 503 (8th Cir.1998).

■ 21. When responsibility transfers from one public agency to another, "the new public agency is required only to provide a program that is in conformity with the placement in the last agreed upon IEP or IFSP." *Johnson,* 287 F.3d at 1181. "The new agency need not, and probably could not, provide the exact same educational program." *Id.*

■ 22. Even if Plaintiffs' request for an exclusive methodology of conductive education is "ideal," the IDEA does not require the provision of an ideal education. *M.B. v. Arlington Central Sch. Dist.,* 36 IDELR 130 (S.D.N.Y.2002).

**Exhaustion.**

■ 23. Exhaustion of administrative remedies and procedures is required where, as here, the particular expertise of an educational hearing officer is necessary to develop a factual record. *Lester H. v. Gilhool,* 916 F.2d 865, 869 (3d Cir.1990). Plaintiffs' complaint states causes of action for "Violations of the IDEA," and for constitutional procedural Due Process violations, "Due process—claim pursuant to [42 U.S.C.] § 1983." Complaint, ¶¶ 30–31, 32–34.

■ 24. "Before a plaintiff can bring a claim for an IDEA violation, he must exhaust his administrative remedies, including a local due process hearing and an appeal to a state agency. 20 U.S.C. § 1415. This allows a school district to bring its expertise to bear and affords the state an opportunity to correct its own mistakes." *Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (citations omitted). This exhaustion prerequisite cannot be circumvented by recasting what is in essence an IDEA claim as some other cause of action, such as a section 1983 action. *W.B. v. Matula,* 67 F.3d 484, 495 (3d Cir.1995).

25. The IDEA provides that any person aggrieved by a final decision under subsection (f) or (k) (i.e., after a local due process hearing), or by a final decision by a state educational agency where an appeal to the state agency is provided by the state, shall have the right to bring a civil action in any state court of competent jurisdiction or in federal district court. 20 U.S.C. § 1415(i)(2)(A). The IDEA further requires that an aggrieved party must exhaust all administrative procedures before bringing an IDEA claim in state or federal court, or a claim under another statute seeking relief which could be obtained under the IDEA. 20 U.S.C. § 1415(I). ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*") (emphasis added).

■ 26. These administrative local and state procedures, though they undoubtedly seem ponderous to anxious parents who are attempting to provide the best services possible to their special needs child, provide an opportunity for the "state and local agencies to exercise discretion and expertise in fields in which they have substantial experience . . . , thus carry[ing] out congressional intent and provid[ing] a means to develop a complete factual record." *Komninos v. Upper Saddle River Bd. of Educ.,* 13 F.3d 775, 779 (3d Cir.1994). See 34 C.F.R. § 300.510

(procedures on appeal to state agency). Accordingly, unless exhaustion is excused because pursuit of administrative remedies would be futile or the child would be irreparably harmed, or because of one of the other narrow exceptions to the exhaustion requirement not applicable here, parents must pursue the administrative remedies available to them under the IDEA, i.e., due process hearings and appeals to state agencies where provided by the state, before they may bring a civil action in state or federal court for violations of the IDEA or section 1983 claims repackaging the IDEA claims in different legal wrapping. *Jeremy H. v. Mt. Lebanon School Dist.,* 95 F.3d 272, 281 (3d Cir.1996); *Matula,* 67 F.3d at 495–96; *Hornstine v. Township of Moorestown,* 263 F.Supp.2d 887, 900 (D.N.J.2003); *Frith v. Galeton Area School Dist.,* 900 F.Supp. 706, 710–11 (M.D.Pa.1995).

27. Plaintiffs have offered insufficient evidence to support the assertions in their complaint that pursuit of administrative remedies would be futile or that Georgia would be irreparably harmed by the Court's refusal to enjoin AIU to continue her IFSP services pending resolution of the dispute over her IEP. Conclusory allegations of futility and irreparable harm are not sufficient to override Congress' carefully constructed administrative scheme, designed to bring educational and developmental expertise to bear on special needs of children. *See Komninos* and *Frith.*

28. A parent has the right to an independent evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency and the agency evaluation is determined to be inappropriate. If the parent request an independent evaluation, the public agency must without unnecessary delay either initiate a hearing to show that its evaluation is appropriate or grant the parent's request. 34 C.F.R. § 300.502(b)(1)(2).

29. If the parent has obtained an independent evaluation at private expense, the results of the evaluation must be considered by the IEP team if it meets agency criteria. 34 C.F.R. § 300.502(c). The term "consider" does not mandate the local agency's acceptance of the recommendations set forth in the report.

30. An evaluation shall be conducted by early intervention agencies for children who are thought to be eligible. The evaluation must be sufficient in scope and depth to investigate information relevant to the young child's suspected disability, including physical development, cognitive and sensory development, learning problems, learning strengths and educational needs, communication development, self-help skills and health considerations. 22 Pa. Code § 14.153.

31. A NOREP is a Notice of Recommended Educational Placement utilized by an educational agency to communicate to parents an action proposed or an action refused, notice triggers the parents right to determine how to proceed if there is a dispute. 34 C.F.R. § 300.503(a)(b).

32. Parental consent must be obtained before an initial evaluation and the initial provision of special education and related services to a child with a disability. 34 C.F.R. § 300.505. Consent for an initial evaluation may not be construed as consent for initial placement 34 C.F.R. § 300.505(a)(2).

33. An appropriate IEP is one that meets the procedural and substantive regulatory requirements and is one that is designed to provide meaningful educational benefit to the child. *Bd. of Educ. v. Rowley.*

34. Compensatory education is designed to remedy a failure to provide an appropriate education for a period of time. *Lester H. v. Gilhool,* 916 F.2d at 871–74. There is a threshold question of whether or not an appropriate program was offered and/or provided. An appropriate program is one "reasonably calculated to enable the child to receive educational benefits." *Ridgewood Bd. of Educ. v. N.E. for M.E.* 172 F.3d 238 (3d Cir.1999).

## IV. CONCLUSION.

Mr. and Mrs. Pardini are reasonable, concerned parents, and they sincerely believe, based upon their first hand, positive experience with Georgia's conductive education first proposed and implemented by AIT, that conductive education is the most effective and beneficial methodology Georgia can receive at this stage of her development. The Pardinis are understandably concerned that Georgia's progress will be delayed if it is not provided in her IEP, or alternatively, that they will be financially and emotionally drained if they have to find private providers of such services. This Court is quite sympathetic to the Pardinis' predicament and admires their efforts to protect and provide for their daughter. However, unfortunately, the IFSP provided by AIT does not constitute a "continuing educational placement" for purposes of the stay-put provision of the IDEA, and defendant AIU is not, therefore, compelled to duplicate the identical services in its proposed IEP.

Instead, Plaintiffs must pursue and exhaust their administrative remedies, albeit potentially frustrating, including due process hearings and an appeal to the Pennsylvania Board of Education's Special Education Appeals Panel, and attain a final decision as to their right to an independent evaluation at public expense and the necessity and appropriateness of including conductive education as part of Georgia's IEP. This administrative procedure must not be permitted to remain a bureaucratic nightmare, however.

The Court urges—indeed, *expects*—the AIU and the Pardinis to fully and in good faith cooperate in expediting the due process proceedings and any appeal that may be filed to the Special Education Appeals Panel. It is painfully obvious that it is not in Georgia's interests to protract these proceedings any more than is inherently necessary. Conversely, it is in Georgia's best interest for the parties to forge an amicable and cooperative alliance, working toward the common goal of swiftly achieving a fair and just resolution of the disputed issues over Georgia's IEP.

The Court's order today closes this case. However, in the unlikely event that this Court's expectations of cooperation prove overly optimistic, it will retain jurisdiction to entertain a motion to reopen this civil action, should one or both parties unreasonably delay the administrative proceedings or otherwise engage in tactics that would thwart the legislative intent to ensure that all disabled children receive a free and appropriate public education. In such a scenario, the IDEA mechanisms would have proven inadequate and futile, arguably, and that would raise the likelihood that exhaustion would be excused.

Based upon the forgoing, the Court will deny plaintiffs' motion for injunctive and other relief. An appropriate order will follow.

## *ORDER OF COURT*

For the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that plaintiffs' complaint requesting injunctive and other relief is denied, and judgment is entered for defendants.

Defendants' motion for summary judgment (Document No. 26) is **GRANTED IN PART,** to the extent it seeks dismissal of the complaint against Ms. Minzenberg; otherwise, said motion for summary judgment is **DENIED as moot.**

This Court retains jurisdiction to the limited extent set forth in the accompanying opinion.

The Clerk of Court shall mark this case closed.