**D.P. and L.P., on behalf of E.P., D.P., and K.P. Plaintiffs**

v.

**SCHOOL BOARD OF BROWARD COUNTY, FLORIDA, Defendant.**

Nos. 04–60297–CIV–MARRA; 04–60297–CIV–SELTZER.

United States District Court, S.D. Florida.

March 8, 2005.

David Joseph Pyper, Sunrise, FL, Gary S. Mayerson, Mayerson & Associates, New York, NY, for Plaintiffs.

Edward James Marko, Marylin C. Batista–McNamara, School Board Attorney's Office, Fort Lauderdale, FL, for Defendant.

## ORDER

MARRA, District Judge.

This cause is before the Court upon Defendant's Motion to Dismiss the Amended Complaint, filed April 20, 2004 (DE 10). On April 30, 2004, Plaintiffs filed a response to the motion. (DE 13.) On May 28, 2004, Defendant filed a reply in support of its motion. (DE 20.) The Court has considered the motion and is otherwise advised in the premises.

## I. Background

On April 6, 2004, Plaintiffs D.P. and L.P. filed, on behalf of E.P., D.P., and K.P., an Amended Complaint asserting claims for declaratory judgment (Count I), injunctive relief (Count II), and attorneys' fees (Count III). (DE 7.)

The facts alleged in the Amended Complaint are as follows: Plaintiff-triplets have each been diagnosed with a serious autism spectrum disorder. (Amended Complaint ¶ 1.) On January 4, 2004, Plaintiff-triplets turned three years old. (Amended Complaint ¶ 11.) Prior to their third birthday, they had been receiving educational services under their respective Individual Family Service Plans ("IFSP") from the State of Florida's early intervention program. (Amended Complaint ¶ 9.) When Plaintiff-triplets turned three, they "aged out" of the Florida early intervention program, and their education became the responsibility of Defendant. (Amended Complaint ¶ 11.) However, Defendant allowed the triplets to turn three without having an Individualized Educational Plan ("IEP") in place for any of the children. (Amended Complaint ¶¶ 4, 13.) Defendants failed to timely evaluate the triplets, and then insisted on delaying the IEP meeting process until after the triplets turned three. (Amended Complaint ¶ 12.) Plaintiffs requested Defendant to continue the services set forth in their early intervention IFSPs. (Amended Complaint ¶ 13.) However, Defendant refused to provide the children with the services they were receiving under their then-existing IFSPs. (Amended Complaint ¶ 14.) Plaintiff-parents have been forced to bear the cost of their children's IFSP services during the pendency of these proceedings. (Amended Complaint ¶ 16.)

On January 6, 2004, Plaintiff-parents requested an impartial due process hearing, arguing that the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., requires that the services authorized by their children's last IFSPs be provided to the children until such time as IEPs are in place for each child and/or all judicial remedies are exhausted. (Amended Complaint ¶ 15.) On January 7, 2004, the requests were referred to the State of Florida Division of Administrative Hearings for assignment to an Administrative Law Judge to conduct a due process hearing. (Exhibit A to Amended Complaint, Final Order of Administrative Law Judge at 3.) On January 9, 2004, during a telephonic conference call, the parties agreed that evidentiary hearings were not necessary because the dispute concerning the continuation of the IFSP services raised a pure legal question. (Final Order at 3.)

On February 10, 2004, the Administrative Law Judge issued a Final Order concluding that the IDEA does not require Defendant to provide Plaintiff-triplets the services of their last IFSPs during the pendency of these proceedings. (Amended Complaint ¶ 18.) The Administrative Law Judge also concluded that he was not empowered to award to Plaintiffs reimbursement for the cost of any private education received by the Plaintiff-triplets or attorneys' fees. (Final Order at 13, 24.)

In the Amended Complaint, Plaintiffs contend that the Administrative Law Judge's interpretation of the IDEA was erroneous because it "failed to take into account or address the fact that the district failed to develop and have in place any IEPs prior to the children's third birthday, as required by federal and state law." (Amended Complaint ¶¶ 18, 23, 24, 25.) Plaintiffs also assert that the Administrative Law Judge failed to specify to what interim services, if any, Plaintiff-triplets should be entitled. (Amended Complaint ¶ 23.) Plaintiffs also contend that the Administrative Law Judge ignored ex-

isting law recognizing that the services rendered pursuant to an IFSP can be deemed an appropriate placement under Part B of the IDEA. (Amended Complaint ¶¶ 28, 29.) In Count I, Plaintiffs ask the Court to declare the pendency placement to he the children's IFSP services, enjoin Defendant from refusing to continue to supplement the children's IFSP services, and order Defendant to reimburse to the Plaintiff-parents the cost of the interim IFSP services. (Amended Complaint at 7–8.) In Count II, Plaintiffs request that the Court reverse the Administrative Law Judge's Final Order and require Defendant hereafter to fund the services provided in the children's IFSPs during the pendency of the administrative and judicial proceedings. (Amended Complaint at 8–9.)

Defendant asks this Court to dismiss the Amended Complaint, arguing that the Final Order issued by the Administrative Law Judge was correctly decided and that Plaintiffs have not exhausted their administrative remedies with respect to the other allegations in the Amended Complaint. (Motion to Dismiss at 1.) The parties' contentions are more fully discussed in the "Discussion" section below.

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed.R.Civ.P. 8(a). It is well settled that a complaint should not be dismissed unless "it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hishon v. King &*

*Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## III. Discussion

### A. Legal Background

The IDEA creates a federal grant program to assist state and local agencies in providing early intervention services for disabled infants and toddlers, and in providing education to disabled children. 20 U.S.C. § 1400. Under Part C of the IDEA, states must provide disabled children under three years of age with an individualized family service plan, or IFSP, setting forth specific early intervention services necessary for the toddler or infant and their family. 20 U.S.C. § 1435(a)(4). Under Part B of the IDEA, states must provide disabled children between the ages of three and twenty-one with the opportunity to receive a "free appropriate public education" ("FAPE") by offering each student special education and related services under an individualized education program, or IEP. 20 U.S.C. § 1412(a)(1)(A), (a)(4). A state is obligated to have policies and procedures in place to ensure a smooth and effective transition from early intervention programs provided under Part C of the Act to preschool programs provided under Part B of the IDEA. 34 C.F.R. § 300.132(a). To that end, a state's policies and procedures must ensure that "[b]y the third birthday of a child .... an IEP, or, if consistent with § 300.342(c) and section 636(d) of the Act, an IFSP, has been developed and is being implemented for the child ...". 34 C.F.R. § 300.132(b).

To ensure disabled children with disabilities are guaranteed procedural safeguards with respect to the provision of FAPE under Part B, the IDEA requires states to provide, among other things, "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the

child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). When a complaint under section 1415(b)(6) is received by the state, the parents of the disabled child have an opportunity for an impartial due process hearing conducted by the state agency. 20 U.S.C. § 1415(f). Following a decision by the state agency, the parents have the right to bring a civil action with respect to the complaint in either state or federal court. 20 U.S.C. § 1415(i)(2).

During the pendency of any such proceedings, unless the parties agree otherwise, "the child shall remain in the then-current educational placement of such child, or, if applying for initial admission to public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." 20 U.S.C. § 1415(j). This provision is also commonly referred to as the "stay-put" provision. The purpose of the stay-put provision is "to prevent school districts from effecting unilateral change in a child's educational program." *Georgia State Department of Education v. Derrick,* 314 F.3d 545, 551 (11th Cir.2002) (citations and internal quotation marks omitted).

The implementing regulation similarly states as follows:

§ 300.514 Child's status during proceedings.

(a) Except as provided in § 300.526, during the pendency of any administrative or judicial proceeding regarding a complaint under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.

(b) If the complaint involves an application for initial admission to public school, the child, with the consent of the parents, must be placed in the public school

until the completion of all the proceedings.

(c) If the decision of a hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents for purposes of paragraph (a) of this section.

34 C.F.R. § 300.514. The issue in this case centers upon whether, under the stay-put provision, a child transitioning from Part C to Part B of the IDEA is entitled to a continuation of the early intervention services provided to the child in conformity with the child's IFSP when an IEP has not been completed by the child's third birthday.

The Office of Special Education and Rehabilitative Services of the United States Department of Education, through its Office of Special Education Programs ("OSEP"), in connection with its issuance of regulations following the 1997 amendments to Part B of the IDEA, stated its position with regard to this issue:

Comment: A few commenters requested that the regulation be revised to make clear that the pendency provisions of § 300.514 apply to children transitioning from early intervention services under Part C to preschool special education and related services under Part B.

Discussion: The pendency provision at § 300.514(a) does not apply when a child is transitioning from a program developed under Part C to provide appropriate early intervention services into a program developed under Part B to provide FAPE. Under § 300.514(b), if the complaint requesting due process involves the child's initial admission to public school, the public agency respon-

sible for providing FAPE to the child must place that child, with the consent of the parent, into a public preschool program if the public agency offers preschool services directly or through contract or other arrangement to nondisabled preschool-aged children until the completion of authorized review proceedings.

64 Fed.Reg. 12, 406, 12.558, 1999 WL 128278 (Mar. 12, 1999).[1] OSEP's interpretation of the stay-put provision is entitled to substantial deference. *Pardini v. Allegheny Intermediate Unit,* 280 F.Supp.2d 447, 455 (W.D.Pa.2003) (concluding that an IFSP was not a "current educational placement" for purposes of the stay-put provision of the IDEA). Adopting OSEP's interpretation of the stay-put provision of Part B of the IDEA, the Administrative Law Judge in this case concluded that the School Board's refusal to provide Plaintiff-triplets with the early intervention services they had been receiving pursuant to Part C of the IDEA did not constitute a violation of the stay put provision set forth in Part B of the IDEA. (Final Order at 23.)

### B. Parties' Contentions

In the motion to dismiss, Defendant contends that the Amended Complaint should be dismissed because the Final Order was correctly decided and Plaintiffs have not exhausted their administrative remedies with respect to the other allegations in the Amended Complaint. (Motion to Dismiss at 1.)

Plaintiff-parents disagree, arguing that the Final Order was incorrect because it essentially permits Defendant to disregard the time requirements of the IDEA without any consequence. (Response to Motion to Dismiss at 2.) Plaintiff-parents argue that this Court must consider De-

fendant's failure to provide an IEP to the children in conjunction with an adjudication of Plaintiff-triplets' pendency entitlements. (Response to Motion to Dismiss at 10.) Plaintiff-parents also submit that the developmental and educational needs of a child with autism are "one in the same," as recognized by 34 C.F.R. § 300.132(b) and Broward County's procedures, such that the early development services received by the children under their respective IFSPs were appropriate pendency placements. (Response to Motion to Dismiss at 11–12.) Plaintiff-parents further contend that the Administrative Law Judge's reliance upon the OSEP's comments was improper because the comments presumed that a public school placement was offered in a timely manner and under a timely IEP. (Response to Motion to Dismiss at 14.) Relying upon *Johnson v. Special Education Hearing Office,* 287 F.3d 1176 (9th Cir. 2002), Plaintiff-parents argue that courts have held that an IFSP can constitute a proper pendency placement under Part B of the IDEA. (Response to Motion to Dismiss at 15.) Plaintiffs argue that even if some issues remain unexhausted, exhaustion of administrative remedies would be futile in this case. Plaintiffs argue that "[t]o hold otherwise would effectively make stay put determinations incapable of judicial review as there is always the potential some dispute could arise sometime in the future." (Response to Motion to Dismiss at 8.)

In response, Defendant argues that Plaintiffs failed to raise at the administrative level the factual issue of Defendant's alleged failure to provide an IEP at the appropriate time. (Reply at 3.) Defendant suggests that Plaintiff is attempting to ar-

---

1. This interpretation is consistent with OSEP's earlier interpretation in a policy letter interpreting a former version of 34 C.F.R. § 300.514. Letter to Klebanoff, 28 IDELR 478 (1997) (which is quoted in relevant part in the Administrative Law Judge's Final Order).

gue the denial of a FAPE in the guise of the IDEA's stay-put provision. (Reply at 3.) Defendant further argues that exhaustion would not be futile, and that the two cases, *Covington v. Knox County School System*, 205 F.3d 912 (6th Cir.2000) and *Engwiller v. Pine Plains Central School District*, 110 F.Supp.2d 236 (S.D.N.Y. 2000), cited by Plaintiffs and which are discussed below, are factually distinguishable. (Reply at 4.) Furthermore, Defendant asserts that the "then-current educational placement" clause of the stay-put provision does not apply to children transitioning from Part C to Part B without regard to whether an IEP has been timely developed, and that, in any event, the failure to provide a timely IEP is outside the scope of this appeal. (Reply at 10–11.) Finally, Defendant posits that even if it had the discretion to utilize the IFSP in creating an IEP, there is no express requirement to do so. (Reply at 12–13.) Defendant summarizes that the only alleged violation in this case is Defendant's failure to provide a timely IEP, and such a denial of FAPE claim must first be raised at the administrative level. (Reply at 13.)

In reply, Plaintiffs reassert some of their previous arguments and, citing to *Wagner v. Board of Education*, 335 F.3d 297 (4th Cir.2003), contend that the mere existence of factual issues relating to a FAPE does not divest this Court of jurisdiction to grant relief under the stay-put provision of the IDEA. (Plaintiffs' reply in support of Cross–Motion at 2–3.)

### C. *Legal Analysis*

After conducting a *de novo* review of the Administrative Law Judge's Final Order and the parties' contentions, the Court concludes that the decision of the Administrative Law Judge was not erroneous. As set forth above, the stay-put provision of the IDEA provides that during the pendency of review proceedings, unless the parties agree otherwise, "the child shall remain in the then-current educational placement of such child, or, *if applying for initial admission to public school*, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." 20 U.S.C. § 1415(j) (emphasis added). A careful reading of this provision reveals that the appropriate pendency placement for a child under the stay-put provision of the IDEA depends upon whether the child has or has not been admitted to public school. The pendency placement of a child is determined by the then-current educational placement, unless the child is "applying for initial admission to public school," in which case the second part of the stay-put provision applies. If the child is applying for initial admission to public school, thereby triggering the second part of the stay-put provision, it follows that the child's pendency placement is not determined by the first part of the stay-put provision. This interpretation of the statute is supported by the grammatical structure of the provision, i.e. the presence of only one main subject-noun, i.e. "the child," and the subsequent disjunctive word "or" which divides the two parts of the stay-put provision.

Thus, the first part of the stay-put provision addresses the pendency placement for the child who has already been admitted to public school. The statutes mandates that "the child shall remain in the then-current educational placement of such child." 20 U.S.C. § 1415(j). The second part of the stay-put provision, on the other hand, addresses the pendency placement for the child who is applying for initial admission to public school. "[I]f applying for initial admission to public school, [the child] shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." 20 U.S.C. § 1415(j). Pursuant to the second clause of the stay-put

provision, with the consent of the parents, the public school program is the statutorily-mandated pendency placement for all children initially entering public school.

In this case, because Plaintiff-triplets had not been admitted to public school at all relevant times, the second clause of the stay-put provision applies. Therefore, Plaintiff-triplets' pendency placement, with the consent of the parents, is the public school program until all proceedings have been completed. *Id.* Because the first clause of the stay-put provision does not apply, the "then-current educational placement" of the triplets is not relevant to a determination of the statutorily-established pendency placement in this case. Thus, Plaintiffs' position that the triplets' pendency placement should be determined by an interpretation of the "then-current educational placement" is untenable.

Moreover, contrary to Plaintiffs' suggestion otherwise, application of the stay-put provision does not depend upon whether the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," was adequate or timely. 20 U.S.C. § 1415(b)(6). Rather, the clear language of the statute establishes that the pendency placement is the public school program for a child applying for initial admission in public school, without regard to the untimeliness or inappropriateness of the IEP for the child. This allows for the implementation of an interim placement without the necessity of delving into the merits a particular plaintiff's complaint. The only prerequisite to implementation of the interim placement in the public school program is the parents' con-

sent. If parental consent is withheld, a pendency placement is simply not provided by the school district during the pendency of the proceedings. There is no indication in the statute that, by withholding their consent, parents are entitled to a pendency placement of their choice.

Moreover, the statute does not make any special exceptions for children who, upon initial admission to public school, were receiving appropriate IFSP services under Part C of the IDEA. All children seeking initial admission to public school are essentially treated the same under the stay-put provision. Although Plaintiffs appear to quarrel with the appropriateness of that result, the Court is not in a position to rewrite the statute. Furthermore, the mere fact that federal law and local procedure recognizes that an IFSP may serve as the IEP of a child aged three through five under certain circumstances, *see* 34 C.F.R. § 300.342; Broward County's Special Programs and Procedures for Exceptional Students at 7, does not in any way change the clear language of the stay-put provision which establishes the public school program is the proper pendency placement for a child initially entering public school.[2]

The Court's interpretation of the stay-put provision is consistent with the OSEP's interpretation, as well as the interpretation of at least one district court that has considered the issue. *See* 64 Fed. Reg. 12, 406, 12.558, 1999 WL 128278 (Mar. 12, 1999); *Pardini,* 280 F.Supp.2d at 455 (concluding that an IFSP was not a "current educational placement" for purposes of the stay-put provision of the

---

**2.** The recognition in federal and local law that an IFSP may be a suitable substitute to an IEP might, however, bear upon the issue of the appropriateness of the private placement and thus whether Plaintiffs are entitled to reimbursement, as discussed below. *School Committee of Town of Burlington v. Depart-*

*ment of Education,* 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) (recognizing that a district court is authorized to order school authorities to reimburse parents for private education if the court ultimately determines that the private placement was appropriate and that a FAPE was not offered).

IDEA). The *Johnson* case, cited by Plaintiffs, is not contrary to this Court's holding since the parties in that case "agree[d] that Nicholas's IFSP constitutes his current educational placement for 'stay put' purposes..." 287 F.3d at 1180–81.

In summary, the Court concludes that the Administrative Law Judge's interpretation of the stay-put provision, i.e. that the children were not entitled to the continuation of their early intervention services as a pendency placement, was not erroneous. In reaching this statutory interpretation, there was no need for the Administrative Law Judge to consider the timeliness or adequacy of Defendant's conduct with respect to the children's IEPs. Similarly, the Administrative Law Judge did not need to determine the children's specific pendency placement to conclude that they were not entitled to the continuation of the IFSP services.[3] Indeed, the parties conceded as much in the administrative proceedings below by stipulating that the interpretation of the stay-put provision was purely a legal question, making evidentiary hearings unnecessary. [T]he parties agreed that evidentiary hearings were not necessary in these cases inasmuch as the dispute between them concerning the continuation of the "services provided on [Petitioners'] last IFSP[s]' was purely a legal one that could be resolved based on briefs submitted by the parties." (Final Order at 3.)

Moreover, a review of the Amended Complaint indicates that all the relief sought by Plaintiff-parents in this case flows from their position that the Administrative Law Judge's decision was erroneous. Even their request for reimbursement for the costs of the IFSP services is based upon their argument they were statutorily entitled to the continuation of the IFSP services. In effect, Plaintiff-parents do not seek any relief independent of the issue of whether the Administrative Law Judge's decision was erroneous. Because the Court concludes that the Administrate Law Judge's decision was not erroneous, Plaintiff-parents are not entitled to the relief they requested.[4]

To the extent that Plaintiff-parents may wish to seek reimbursement for the costs of the IFSP services based upon Defendant's failure to provide adequate and/or timely IEPs, they have not requested such relief in the Amended Complaint, and the issue is premature since it has not been determined whether the Plaintiff-triplets have been denied a FAPE. If either the Administrative Law Judge determines that the Plaintiff-triplets have been denied a FAPE, or if the Court, upon appeal of a decision by the Administrative Law Judge in favor of Defendant on the FAPE issue,

---

3. In any case, pursuant to the stay-put provision and OSEP's interpretation thereof, Plaintiff-triplets' pendency placement, with the consent of the parents, is the "public school program" until all proceedings have been completed, *see* 20 U.S.C. § 1515(j), and, more specifically, the "public preschool program if the public agency offers preschool services directly or through contract or other arrangement to nondisabled preschool-aged children until the completion of authorized review proceedings," *see* 64 Fed.Reg. 12, 406, 12,558, 1999 WL 128278 (Mar. 12, 1999).

4. Because interpretation of the stay-put provision was raised before, and properly decided by, the Administrative Law Judge in the first instance, and since there are no relevant issues presently before the Court that remain unresolved, remand of this case for administrative exhaustion is unnecessary. In so concluding, the Court need not decide whether the requirement of administrative exhaustion should even apply to this case. *See Murphy v. Arlington Central School District Board of Education*, 297 F.3d 195 (2d Cir.2002), as cited by Plaintiffs in their reply memorandum in support of their Motion for Preliminary Injunction.

finds that a FAPE has been denied, the Court will then consider the appropriateness of requiring Defendant to reimburse Plaintiff-parents for the cost of the IFSP services. *See* 20 U.S.C. § 1415(i)(2)(B) ("the court ... shall grant such relief as the court determines is appropriate."); *School Committee of Town of Burlington v. Department of Education*, 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) (recognizing that a district court is authorized to order school authorities to reimburse parents for private education if the court ultimately determines that the private placement was appropriate and that a FAPE was not offered); *Board of Education v. Jeff S.*, 184 F.Supp.2d 790, 803 (C.D.Ill.2002) (failure of the district to present educational proposals to parents in a timely manner triggered the school district's obligation to reimburse the parents for the costs of private school education); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii).[5]

### D. Conclusion

Based upon the foregoing, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Dismiss the Amended Complaint, filed April 20, 2004 (DE 10) is **GRANTED**. The Amended Complaint is **DISMISSED** with prejudice as to the request for a pendency placement, and **DISMISSED** without prejudice as to the request for reimbursement and attorney's fees. Plaintiffs may resubmit a request for reimbursement and supporting memorandum of law after the Administrative Law Judge has rendered a decision, if any, on the issue of a FAPE.

2. The decision of the Administrative Law Judge is hereby **AFFIRMED.**

3. Any pending motions are **DENIED** as moot.

4. The Clerk shall **CLOSE** this case.

5. The Court does not, at this time, pass on the issue of whether Plaintiffs would be entitled to reimbursement.